UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ARLENE GONZALES,**<br><br>        **Plaintiff**<br><br>        **v.**<br><br>**SPECIALIZED LOAN SERVICING LLC, et al.,**<br><br>        **Defendants** | **CASE NO. 1:20-CV-0159 AWI BAM**<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>(Doc. No. 11) |

    This is a mortgage related matter brought by pro se Plaintiff Arlene Gonzales ("Gonzales") against Defendant Specialized Loan Servicing, LLC ("SLS").[1] The matter was removed from the Tulare County Superior Court. Currently before the Court is SLS's Rule 12(b)(6) motion to dismiss. Gonzales has filed no opposition or response of any kind to SLS's motion. For the reasons that follow, SLS's motion will be granted and this case will be closed.

## **RULE 12(b)(6) FRAMEWORK**

    Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However,

---

[1] The other named Defendant, Bank of America, was dismissed from this case on April 13, 2020, through a Rule 41(a)(1) dismissal. See Doc. Nos. 16, 17.

complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters subject to judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

2

**BACKGROUND**

From the Complaint and judicially noticeable documents,[2] Gonzales owns and resides at a property located on W. School Ave. in Visalia, California ("the Property"). Two separate loans are secured by the Property. The first loan was obtained on February 28, 2005 in the amount of $126,000. (hereinafter "First Loan"). The First loan is secured by deed of trust. Also on February 28, 2005, Plaintiff obtained a home equity line of credit in the amount of $15,000 (hereinafter "Second Loan"). The Second Loan is secured by a deed of trust. Both loans identify the lender as Countrywide Home Loans, Inc. The First Loan is serviced by Bank of America ("BOA").

On June 21, 2006, the Second Loan was modified by increasing the available line of credit from $15,000 to $30,000. In July 2012, the Second Loan's deed of trust was assigned to the Bank of New York Mellon ("BONY").

In May 2013, Gonzales received notice that the Second Loan had been sold to BONY. Gonzales called and spoke to LaShon Settle of BOA to see how the transfer may affect a pending loan modification application. Settle explained that the Second Loan had been sold by BOA and had been "charged off," which Gonzales alleges meant that she did not have any duties or obligations remaining and was no longer responsible for making payments. Ms. Settle several times thereafter confirmed that Gonzales owed no obligations in relation to the Second Loan.

On July 17, 2015, a deed of trust was recorded by CalHFA Mortgage Assistance, reflecting that Gonzales obtained a loan of $43,000. This amount was applied to the First Loan.[3] BOA continued to service the Second Loan and not require Gonzales to make any payments.

---

[2] SLS requests that the Court take judicial notice of eight documents that were recorded by the Tulare County Clerk-Recorder's Office. See Doc. No. 11-2. Gonzales does not oppose the request. Since these documents are a matter of public record that are maintained by the Tulare County Clerk-Recorder's Office, the Court will grant SLS's request and take judicial notice of the eight documents. See Willis v. JPMorgan Chase Bank, N.A., 250 F.Supp.3d 628, 630 n.1 (E.D. Cal. 2017); Jamison v. Bank of Am., N.A., 194 F.Supp.3d 1022, 1025 n.1 (E.D. Cal. 2016).

[3] The Complaint erroneously identifies the CalHFA loan as the "Second Subject Loan" and then makes numerous allegations regarding the "Second Subject Loan" against SLS. However, the CalHFA loan relates to the First Loan, not the Second Loan which was a line of credit. SLS is not attempting to enforce or foreclose on the CalHFA related loan or the First Loan. Rather, SLS is attempting to foreclose on the Second Line/line of credit. Despite the allegations in the Complaint that reference the "Second Subject Loan" as the CalHFA loan, the Court will view all allegations against SLS as relating to the Second Loan/line of credit and not the CalHFA loan because the line of credit is the loan at issue with respect to SLS.

1    In June 2016, Gonzales and BOA entered into a loan modification agreement that modified
2 the terms of the First Loan.

3    On March 19, 2019, SLS in its capacity as loan servicer for BONY, recorded a notice of
4 default concerning the Second Loan.

5    On April 1, 2019, Gonzales received the notice of default and contacted SLS.  SLS
6 informed Gonzales that a large amount of equity had been found in the property, which caused
7 SLS to decide to move forward with foreclosure.  Gonzales said that she did not want to lose the
8 property, and SLS advised that Gonzales could make a "short payoff offer" of $2,000 to cease
9 foreclosure efforts.

10    On April 3, 2019, Les Poppitt from SLS called Gonzales and explained that the foreclosure
11 appeared strange to him.  After receiving further information from Gonzales, Mr. Poppitt said that
12 he would place the foreclosure on hold while he further investigated the matter.

13    Apparently in early April 2019, Gonzales made the $2,000 short payoff offer to SLS.
14 Several weeks later, Gonzales called SLS about the offer and was advised that it had not been
15 presented to the investors and that SLS would contact Gonzales once a decision had been made.
16 Gonzales did not hear back from SLS regarding the $2,000 offer or Mr. Poppitt's investigation.

17    Apparently between April 2019 and July 2019, Gonzales made short payoff offers of
18 $2,000.00, $20,000.00, and $40,000.00, but the offers have either been rejected or SLS has failed
19 to respond.  Gonzales contacted BONY, but BONY denied any interest in the Second Loan.

20    In July 2019, Gonzales and her neighbor went to a BOA branch and met with a manager.
21 The manager said that SLS was engaging in a scam because when a loan is sold and charged off,
22 there was a profit and loss statement involved.  The manager advised Gonzales not to sign
23 anything from SLS and to report SLS to the police.  Gonzales believes that SLS is attempting to
24 collect on a debt in which it has no interest.  In this time period, Gonzales sent SLS about 40
25 emails, but SLS responded to none of them.  Gonzales has also submitted a loan modification
26 application on the Second Loan, but nothing has occurred.  Gonzales has been told in phone calls
27 with SLS that SLS has found a large amount of equity in the property, they have waited 10 years
28 to foreclose, and that the investors would accept nothing less than $90,000 as a short payoff.

4

A notice of trustee's sale was later recorded on October 22, 2019, indicating that the amount due on the line of credit was about $91,500.00.

Gonzales filed this suit on January 30, 2020. BOA was dismissed from this case on April 13, 2020, though a Rule 41(a)(1)(A)(ii) stipulation. See Doc. No. 16.

## **DEFENDANT'S MOTION**[4]

**1.  First Cause of Action – Breach of Contract**

*Defendant's Argument*

SLS argues that it services the Second Loan on behalf of BONY. SLS argues that it did not and has not signed the Second Loan's deed of trust. Rather, the Second Loan's deed of trust was originally executed by Countrywide and transferred to BONY. SLS argues that because it did not sign any deed of trust, it cannot be liable for breach of contract based on any deed of trust.

*Relevant Allegations from the Complaint*

The Complaint alleges that SLS materially breached the deed of trust on the Second Loan. See Complaint ¶ 17. The Complaint alleges that the deed of trust was signed by at least one defendant, and all defendants were acting as each other's agents. See id. The Complaint also alleges that Paragraph 5.2 of the deed of trust has been breached, but quotes language that applies to the CalHFA loan. See id. at ¶ 18.

*Discussion*

Loan servicers who are not signatories to deeds of trust are not parties to the deeds of trust. See Harticon v. U.S. Bank Tr., N.A., 2019 U.S. Dist. LEXIS 35190, *9 (E.D. Cal. Mar. 4, 2019); Reed v. US Bank N.A., 2015 U.S. Dist. LEXIS 112657, *8 (N.D. Cal. Aug. 25, 2015); Howard v. First Horizon Home Loan Corp., 2013 U.S. Dist. LEXIS 85585, *6 (N.D. Cal. June 18, 2013). Stated differently, "there is no contractual relationship between a mortgagor and a loan servicer." Galope v. Deutsche Bank Nat'l Tr. Co., 666 F. App'x 671, 674 (9th Cir. 2016); see also Conder v. Home Savings of Am., 680 F.Supp.2d 1168, 1174 (C.D. Cal. 2010). The Complaint's generic agency allegations do not create privity between Gonzales and SLS or create contractual

---

[4] The Court reiterates that Plaintiff filed no opposition or response of any kind to SLS's motion to dismiss.

5

obligations between Gonzales and SLS.  See Howard, 2013 U.S. Dist. LEXIS 85585 at *6; Conder, 680 F.Supp.2d at 1174; Brooks v. Quantum Servicing Corp., 2012 Cal. App. Unpub. LEXIS 3991, *8-*9 (May 25, 2012).[5]  "[A]n agent cannot be held liable for breach of a duty which flows from a contract to which he is not a party."  Brooks, 2012 Cal.App.Unpub. LEXIS 3991 at *9; Filippo Industries, Inc. v. Sun Ins. Co., 74 Cal.App.4th 1429, 1443 (1999).  The existence of a contract is the first element of a breach of contract claim.  Oasis West Realty LLC v. Goldman, 51 Cal.4th 811, 821 (2011); C.W. Howe Partners, Inc. v. Mooradian, 43 Cal.App.5th 688, 699 (2019).  Because SLS is not a party to any deed of trust with Gonzales, she may not maintain a breach of contract claim against SLS.  See Galope, 666 F. App'x at 674; Harticon, 2019 U.S. Dist. LEXIS 35190 at *9; Reed, 2015 U.S. Dist. LEXIS 112657 at *8; Howard, 2013 U.S. Dist. LEXIS 85585 at *6; Conder, 680 F.Supp.2d at 1174; Brooks, 2012 Cal.App.Unpub. LEXIS 3991 at *8-*9.  Dismissal of the first cause of action without leave to amend is appropriate.

**2.      Second Cause of Action – Breach of the Covenant of Good Faith & Fair Dealing**

*Defendant's Argument*

SLS argues that because no contract exists between it and Gonzales, there cannot be a breach of the implied covenant of good faith and fair dealing.

*Relevant Allegations from the Complaint*

The Complaint alleges that a contractual relationship exists between SLS and Gonzales through the deed of trust on the Second Loan and/or through agency principles related to the Second Loan.  See Complaint ¶¶ 24, 25.

*Discussion*

"The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."  Green Valley Landowners Ass'n v. City of Vallejo, 241 Cal.App.4th 425, 433 (2015); Smith v. City & Cnty. of San Francisco, 225 Cal.App.3d 38, 49

---

[5] Despite state rules, the Court may consider unpublished state cases as persuasive authority. See Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); Robles v. Agreserves, Inc., 158 F.Supp.3d 952, 976 n.12 (E.D. Cal. 2016).

(1990). The implied covenant does not exist independently of a contract. Molecular Analytical Sys., Inc. v. Ciphergen Biosystems, Inc., 186 Cal.App.4th 696, 712 (2010). As discussed above, SLS is not a party to the Second Loan's deed of trust, or any other deed of trust in this case. Because no contract exists between SLS and Gonzales, she may not maintain a claim for breach of the implied covenant of good faith against SLS. See Green Valley, 241 Cal.App.4th at 433; Molecular Analytics, 186 Cal.App.4th at 712. Dismissal without leave to amend is appropriate.

**3.      Fourth, Fifth, Sixth, & Seventh Causes of Action – Fraudulent Misrepresentation**

*Defendant's Argument*

SLS argues that allegations that a loan is identified as "charged off" does not mean that Gonzales is no longer under an obligation to make payments. A charged-off loan is one that deemed uncollectible, it does not mean that the loan is no longer valid. Thus, that BOA may have viewed the loan as "charged off" does not mean that SLS cannot collect on it. Further, SLS has never made any statements that the Second Loan was "charged-off" or that no payments were unnecessary, rather BOA made those statements. SLS argues that it cannot be bound by BOA's statements. SLS argues that its statements that a balance was owing on the Second Loan were true. SLS also argues that Gonzales's allegations regarding a short payoff offer are vague and not false. Gonzales alleges that SLS said she could make an offer and she made three, they just were not accepted. Relatedly, there are no allegations that demonstrate how any alleged misrepresentation could have cause Gonzales harm.

*Relevant Allegations from the Complaint*

Each of Gonzales's four fraud claims against SLS are based on slight variations of the same allegations. The Complaint alleges that SLS misrepresented it had an interest in the Second Loan by recording the April 2019 notice of default, that Gonzales owed a balance on the Second Loan even though that loan had been "charged off" in May 2013, and that Gonzales could make a short payoff offer of $2,000 that would be accepted yet declined to accept offers of $2,000.00, $20,000.00, and $40,000.00. See Complaint ¶¶ 39, 48, 53, 63. The Complaint alleges that SLS knew these representations were false, but they were made to induce Gonzales into relying on the

representations and believing that SLS was proceeding with a valid foreclosure. See id. at ¶¶ 40, 50, 56, 66. The Complaint alleges that Gonzales relied on the misrepresentations and believed that she was contractually bound by the Second Loan and that SLS was properly proceeding with a valid foreclosure. See id. at ¶¶ 42, 57. The Complaint alleges Gonzales's reliance on the misrepresentations were reasonable and caused her to refrain from obtaining legal counsel in a timely manner, which would have resolved the matter earlier and saved Gonzales thousands of dollars in excessive fees, costs, and interests as well as the loss of the Property though a foreclosure sale. See id. at ¶¶ 43, 58. Finally, Gonzales alleges that she suffered general and special damages in a sum to be determined. See id. at ¶ 44, 51, 60, 68.

*Discussion*

Gonzales alleges four separate fraud related causes of action: intentional misrepresentation,[6] negligent misrepresentation,[7] false promise or promissory fraud,[8] and fraudulent concealment.[9] Because each of these causes of action sound in fraud, they must be pled with specificity under Rule 9(b).[10] See Marroquin v. Pfizer, Inc., 367 F.Supp.3d 1152, 1165-66

---

[6] "The elements of a cause of action for intentional misrepresentation are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage." Daniels v. Select Portfolio Servicing, Inc., 246 Cal. App. 4th 1150, 1166 (2016).

[7] "The elements of a negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." Tindell v. Murphy, 22 Cal.App.5th 1239, 1252 (2018) (citation omitted).

[8] "False promise" or "promissory fraud" is a "subspecies of fraud and deceit" that has six elements: "(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e]." Gruber v. Gruber, 48 Cal. App. 5th 529, 540 (2020) (citations omitted).

[9] The elements of fraudulent concealment are "(1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage." Burch v. CertainTeed Corp., 34 Cal.App.5th 341, 348 (2019).

[10] To plead fraud with the particularity required by Rule 9(b), a complaint "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 964 (9th Cir. 2018); Marroquin, 367 F.Supp.3d at 1166. Additionally, when the defendant is an entity, a complaint generally must also identify the person who made the false representations on behalf of the entity. United States ex rel. Lee v. SmithKline Beecham, 245 F.3d 1048, 1051 (9th Cir. 2001); Marroquin, 367 F.Supp.3d at 1166.

8

(E.D. Cal. 2019); UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc., 117 F.Supp.3d 1092, 1105-06 (C.D. Cal. 2015). Further, each of these causes of action require some form of falsity by a defendant and detrimental reliance and harm caused by the false representation. See Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n, 55 Cal.4th 1169, 1183 (2013); Conroy v. Regents of Univ. of Cal., 45 Cal.4th 1244, 1256 (2009); Footnotes 4, 5, 6, 7 *supra*.

There are at two critical problems with Gonzales's causes of action. First, each of the four causes of action allege that SLS had no authority to attempt to collect on the Second Loan or begin foreclosure proceedings because BOA represented that the Second Loan was "charged off" or "written off." However, that the Second Loan was "charged off" or "written off" by BOA does not mean that the loan was extinguished. "'Charge-off' is defined as a declaration by a creditor that an amount is unlikely to be collected." Lewis v. Ben. Cal., Inc., 2018 U.S. Dist. LEXIS 199771, *12 n.3 (N.D. Cal. Nov. 26, 2018); Frost v. Resurgent Capital Servs., L.P., 2016 U.S. Dist. LEXIS 83317, *1 n.1 (N.D. Cal. June 27, 2016); Talaie v. Wells Fargo Bank, N.A., 2013 U.S. Dist. LEXIS 94044, *13 (C.D. Cal. June 27, 2013); see also Nissou-Rabban v. Capital One Bank (USA), N.A., 285 F.Supp.3d 1136, 1142 n.1 (S.D. Cal. Jan. 23, 2018). "While the charge is considered uncollectable by the original lender, the debt is still legally valid and remains so after charge-off." Lewis, 2018 U.S. Dist. LEXIS 199771 at *12 n.3; Frost, 2016 U.S. Dist. LEXIS 83317 at *1 n.1. That is, a loan that is "charged off" may still be legally collected upon. Talaie, 2013 U.S. Dist. LEXIS 94044 at *13. Therefore, that BOA told Gonzales that the Second Loan was "charged off" does not mean that the Second Loan was forgiven, discharged, or otherwise uncollectible. Further, judicially noticed documents show that the Second Loan was transferred to BONY in 2012 by Countrywide Home Loans. See Doc. No. 11-2 at Ex. 4. The Complaint also acknowledged that SLS has represented that BONY holds the Second Loan. There are no allegations or exhibits that tie BOA's representations to SLS or BONY or that indicate that SLS is not actually the servicer of the Second Loan for BONY. The Complaint's allegations regarding SLS's lack of authority are legally unsound and not plausible.

Second, each of the causes of action allege that SLS told Gonzales that it would accept a

9

short payoff offer $2,000 in order to cease pursuing the foreclosure.[11]  These representations appear to have been made in April 2019 after Gonzales received the notice of default.  Accepting the allegation as true, the Court agrees with SLS that there does not appear to be any detrimental reliance by or harm to Gonzales.  There is no indication for how long foreclosure efforts would cease if the $2,000 offer was made.  Ceasing current foreclosure efforts is not tantamount to forgiving or terminating the debt.  The judicially noticed documents before the Court indicate that there is between approximately $41,000 (per the notice of default) and $91,000 (per the notice of trustee's sale) owed on the Second Loan and that interest continues to accrue.  Given the amount of debt at issue, it is not reasonable to view the Complaint as alleging that further attempts to collect on the debt or foreclose on the Property would completely end.  Further, as of May 2020, over a year from when Gonzales received the notice of default, there is no indication that a foreclosure has actually happened.  Thus, while Gonzales's offer was not accepted, the foreclosure efforts have ceased (at least temporarily).  The Complaint also alleges that Gonzales could have obtained counsel sooner and resolved the matter with less expense.  However, that is not plausible.  Gonzales still does not have counsel and the debt at issue is significant.  Moreover, there is nothing about the representations made by SLS that should have reasonably prevented Gonzales from seeking/obtaining counsel for any material period of time.  Without detrimental reliance and resulting damages, there is no plausible fraud claim against SLS with respect to the $2,000 short payoff offer.

      There are other problems with Gonzales's fraud claims.  However, the two issues discussed above are dispositive.  The allegations are do not plausibly show actionable fraud and it does not appear that amendment could save these claims.  Therefore, dismissal of the fourth, fifth, sixth, and seventh causes of action without leave to amend is appropriate.

---

[11] The Complaint alleges at different points that SLS invited Gonzales to make the $2,000 offer, see, e.g., Complaint ¶ 11(a)(ii), while at other points the Complaint alleges that SLS personnel stated that SLS would accept a $2,000 short payoff offer. See, e.g., id. at ¶ 53(a).  The former representation is not even arguably fraudulent, since it is merely suggesting that the offer be made without any guarantee that it will be accepted.  Viewing the allegations in the light most favorable to Gonzales, the Court will accept that SLS personnel stated that Gonzales could make a $2,000 short payoff offer that would be accepted.  See Kwan, 854 F.3d at 1096.

**4.     Third Cause of Action – Negligence**

*Defendant's Argument*

SLS argues that the Ninth Circuit and lower California appellate courts follow the rule that lenders or servicers owe no duty of care unless their actions go beyond the domain of a typical money lender or loan servicer.  Gonzales is complaining that SLS breached a duty of care merely by attempting to collect payments on a loan that she does not believe is valid.  That activity falls squarely within the realm of SLS's conventional role as a money lender.

*Relevant Allegations from the Complaint*

The Complaint alleges that SLS owed Gonzales a duty of care to exercise reasonable skill and servicing the Second Loan and ensuring that she would not be subject to wrongful foreclosure. See Complaint ¶ 29.  SLS breached that duty by filing false documents, attempting to collect on an alleged balance without authority to do so, misrepresenting that a $2,000 short payoff offer would be accepted, and proceeding with foreclosure upon the subject property without the proper authority or right to do so.  See id. at ¶ 30.  The Complaint alleges that that it was foreseeable that subjecting her to improper foreclosure proceedings would cause her injury through the potential loss of the Property, damage to credit, and payment of exorbitant interest and fees related to the foreclosure.  See id. at ¶¶ 31, 32.

*Discussion*

The elements of actionable negligence are: (1) a legal duty to use due care; (2) a breach of that duty; (3) causation; and (4) damages.  See Ladd v. County of San Mateo, 12 Cal.4th 913, 917, (1996); Brown v. Ransweiler, 171 Cal.App.4th 516, 534 (2009).  The Court will assume that the Complaint identifies an appropriate duty of care that was owed by SLS to Gonzales, namely a duty to use reasonable skill in servicing the loan and ensuring that Gonzales would not be subject to a wrongful foreclosure.[12]  However, even accepting this duty, there is no plausible claim alleged.

---

[12] The state of the law with respect to negligence liability for a money lender or loan servicer is in a state of flux.  The California Supreme Court has yet to settle the issue and lower courts are divided.  Some appellate courts hold to the general rule that there is no negligence liability for conduct done within the traditional role of a money lender.  E.g. Sheen v. Wells Fargo Bank N.A., 38 Cal.App.5th 346, 352 (2019), review granted by 254 Cal.Rptr.3d 638 (Cal. 2019);  Luceras v. BAC Home Loans Servicing, LP, 221 Cal.App.4t h 49, 67 (2013).  Other courts have found (after applying the so-called *Biakanja* factors) that money lenders can owe a duty of care even though the conduct at issue is within the traditional role of a money lender.  E.g. Weimer v. Nationstar Mortg., LLC, 47 Cal.App.4th 341, 358-66

11

1  As discussed above, the fact that the Second Loan may have been "charged off" does not make it
2  unenforceable or no longer legally binding.  See Lewis, 2018 U.S. Dist. LEXIS 199771 at *12 n.3;
3  Frost, 2016 U.S. Dist. LEXIS 83317 at *1 n.1.  That is, a loan that is "charged off" may still be
4  legally collected upon.  Talaie, 2013 U.S. Dist. LEXIS 94044 at *13.  Also as discussed above, the
5  Complaint fails to allege any plausible fraud claims either because the conduct identified is not
6  fraudulent or because Gonzales cannot show that she detrimentally relied on fraudulent actions by
7  SLS which resulted in harm.  In other words, the Complaint does not plausibly show that SLS
8  engaged in foreclosure proceedings without valid authority.  Therefore, the Complaint does not
9  plausibly allege that SLS breached any duty owed to Gonzales by subjecting her to the foreclosure
10 process.  Dismissal of this claim without leave to amend is appropriate.

### **5.** **Eighth Cause of Action – Declaratory Relief**

*Defendant's Argument*

SLS argues that there is no basis for declaratory relief.  The basis of Gonzales's request involves the ownership rights to the Property and the validity of the foreclosure proceedings.

*Relevant Allegations from the Complaint*

The Complaint alleges that there is a dispute between Gonzales and SLS as to the duties and obligations of the parties regarding the Second Loan and foreclosure proceedings.

*Discussion*

In California, "declaratory relief is designed in large part as a practical means of resolving controversies, so that parties can conform their conduct to the law and prevent future litigation." Meyer v. Sprint Spectrum LP, 45 Cal.4th 634, 648 (2009) (discussing Cal. Code Civ. P. § 1060). A court need not exercise power to grant a declaration under Cal. Code Civ. P. § 1060 "in any case where its declaration or determination is not necessary or proper at the time under all the

---

(2020); Alvarez v. BAC Home Loan Servicing, L.P., 228 Cal.App.4th 941, 948-49 (2014). Additionally, the Ninth Circuit has recognized the conflict in California law, see 1617 Westcliff LLC v. Wells Fargo Bank N.A., 686 F. App'x 411, 416 (9th Cir. 2017), but has not addressed the issue in a binding published opinion. The split generally arises in the context of a loan modification application/procedure. That is not the case here as no loan modification is at issue. Because the Court can resolve this claim without the need for adopting either the *Alvarez* or *Luceras* line of cases, it is enough to note that the issue remains unsettled.

circumstances." Cal. Code Civ. P. § 1061; Meyer, 45 Cal.4th at 647. Here, the dispute between SLS and Gonzales is fully encapsulated by the substantive causes of action in the Complaint. A declaration would not accomplish anything more than success on one of Gonzales's substantive claims. Further, the Court has not found that Gonzales has plausible claims that negate SLS's foreclosure or collection efforts with respect to the Second Loan. That is, the bases for the controversy between Gonzales and SLS does not entitle Gonzales to relief. Therefore, the Court concludes that a declaration is unnecessary under the circumstances of this case. See Cal. Code Civ. P. § 1061.

## **6.    Ninth Cause of Action – Quiet Title**

*Defendant's Argument*

SLS argues that Gonzales has not plausibly alleged that she can tender the underlying debt owed on the Second Loan, and tender is a requirement in a quiet title action. SLS also argues BONY holds the beneficial interest in the deed of trust and thus, has an adverse claim against the property. Despite having an adverse claim, Gonzales has not made BONY a party to this action, which is contrary to the statutory requirements for a quiet title action.

*Relevant Allegations from the Complaint*

The Complaint alleges that Gonzales is the sole owner of the Property, but that SLS claims an adverse interest in the Property through the Notice of Default. See Complaint ¶¶ 77, 80. The Complaint alleges SLS's adverse claim is based on fraud, deceit, and bad faith, and that it has no interest in the Property. See id. at ¶ 81. The Complaint alleges that any tender requirement should be waived because the value of her monetary claims and set-offs equal or exceed the value of the debt and because the foreclosure related proceedings are blatantly fraudulent. See id. at ¶ 12(a).

*Legal Standard*

A quiet title action is meant to "finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to." Yuba Inv. Co. v. Yuba Consolidated Gold Fields, 199 Cal. 203, 209 (1926); Deutsche Bank Nat'l Trust Co. v. Pyle, 13 Cal.App.5th 513, 524 (2017). By statute, a

quiet title plaintiff must file a verified complaint that includes: (1) a description of the property, (2) the basis for the plaintiff's claim of title, (3) the adverse claims the plaintiff seeks to adjudicate, (4) the date as of which the plaintiff seeks to adjudicate those claims, and (5) a prayer for the determination of the plaintiff's title against the adverse claims. Cal. Civ. Code § 761.020; Pyle, 13 Cal.App.5th at 524. Thus, one element of a quiet title claim is that the defendant has an adverse claim to the title of the property at issue. Orcilla v. Big Sur, Inc., 244 Cal.App.4th 982, 1010 (2016). The plaintiff is required to "name as defendants the persons having adverse claims that are of record or known to the plaintiff or reasonably apparent from an inspection of the property." Cal. Civ. Code § 762.060(b); Pyle, 13 Cal.App.5th at 524. "A quiet title judgment cannot be entered in the absence of all parties with an interest in the property at issue." Ranch at the Falls LLC v. O'Neal, 38 Cal.App.5th 155, 173 (2019).

*Discussion*

This claim fails for at least two reasons.

First, judicially noticed documents show that BONY holds the beneficial interest in the Second Loan. See Doc. No. 11-2 at Ex. 4. There is no document that refutes the judicially noticed transfer of the Second Loan to BONY. Further, the Complaint acknowledges that SLS sent Gonzales a letter that stated the Second Loan was owned by BONY. See Complaint ¶ 11(q). In contrast, the Complaint alleges that Gonzales at an unknown date, contacted BONY in an unknown fashion, and, presumably providing some unknown information, was told in an unknown way by an unknown person that BONY had no interest in the Second Loan. See id. at ¶ 11(s).[13] These non-specific allegations are insufficient to overcome the judicially noticed transfer of the Second Loan to BONY. Therefore, the Court does not accept the allegations that BONY has no interest in the Second Loan. See Seven Arts, 733 F.3d at 1254. Because BONY clearly has an adverse interest in the Property, but is not a party to this case, a quiet title judgment would be improper. See Ranch at the Falls, 38 Cal.App.5th at 173.

Second, SLS is only the loan servicer. A mere loan servicer does not have an adverse

---

[13] Given how the Complaint erroneously tied SLS (and thus BONY) to the CalHFA loan, it is possible that BONY was asked about the CalHFA loan and not the Second Loan/line of credit. If BONY was asked about the CalHFA loan, then BONY would correctly deny any interest in that loan.

14

1 claim in the property that is subject to a deed of trust/loan.  See Watson v. Bank of Am., Nat'l
2 Ass'n, 2016 U.S. Dist. LEXIS 85580, *58 (S.D. Cal. June 30, 2016); Walters v. Fid. Mortg. of
3 Cal., Inc., 2010 U.S. Dist. LEXIS 36839, *17-*18 (E.D. Cal. Apr. 14, 2010); Bunag v. Aegis
4 Wholesale Corp., 2009 U.S. Dist. LEXIS 64605, *13 (N.D. Cal. July 27, 2009); Boles v.
5 Merscorp, Inc., 2008 U.S. Dist. LEXIS 115693, *7 (C.D. Cal. Dec. 12, 2008).  Because SLS has
6 no adverse interest in the Property, SLS is not a proper party to a quiet title action.
7     Dismissal of this claim without leave to amend is appropriate.

**7.    Tenth Cause of Action – Slander of Title**

*Defendant's Argument*

SLS argues that the notice of default is not fraudulent and that the chain of title shows that BONY is the current beneficiary and that SLS is the current servicer.  Gonzales owes a debt on the Second Loan and the allegations do not show an improper or fraudulent attempt to foreclose or that the notice of default is otherwise invalid.

*Relevant Allegations from the Complaint*

The Complaint alleges that SLS has slandered Gonzales's title to the Property by filing with the Tulare County Clerk/Reporter a fraudulent and invalid notice of default.  See Complaint ¶¶ 84-86.

*Discussion*

The elements of a claim of slander of title are: "(1) a publication, (2) which is without privilege or justification," (3) which is false, and (4) which "causes direct and immediate pecuniary loss."  Schep v. Capital One, N.A., 12 Cal.App.5th 1331, 1336 (2017).  The statements must have the effect of disparaging the plaintiff's title to property.  See Burkett v. Griffith, 90 Cal. 532, 537 (1891); M.F. Farming Co. v. Couch Distributing Co., Inc., 207 Cal.App.4th 180, 198-99 (2012).

Here, the Complaint does not plausibly allege the second, third, and fourth causes of action.  First, the recording of a notice of default is privileged.  Schep, 12 Cal.App.5th at 1336 (citing Cal. Civ. Code § 2924(d)(1)).  Second, as discussed above, the Complaint does not

15

plausibly allege that SLS engaged in fraudulent activity. There allegations and judicially noticed documents do not indicate that SLS lacked the authority to record the notice of default or that the notice of default was somehow invalid. Therefore, the notice of default is not "false." Third, no damages are identified that could reasonably be construed as "direct and immediate pecuniary loss." Instead, there is only a general allegation that Plaintiff suffered general and special damages "according to proof." Complaint ¶ 89. It does not appear to the Court that these infirmities can be cured. Therefore, dismissal of the tenth cause of action without leave to amend is appropriate.

**8.     Eleventh Cause of Action – Cancellation of Instruments**

*Defendant's Argument*

SLS argues that the loan being "charged off" does not make the loan invalid. SLS also argues that Gonzales cannot tender the amount owed on the indebtedness.

*Relevant Allegations*

The Complaint alleges that the Notice of Default recorded by SLS is void or voidable because: (1) BOA on several occasions informed Gonzales that the Second Loan was "charged off" in May 2013, (2) SLS refused to accept any of the three "short payoff" offers made despite inviting an offer of $2,000.00, SLS would only accept a payoff offer of $90,000.00, and (3) BONY denied having an interest in the Second Loan. See Complaint ¶¶ 11, 12, 94, 95. The Complaint alleges that Gonzales will suffer serious injury in the form of loss of the Property, eviction, damage to credit, and exorbitant sums in interest, fees, and costs. See id. at ¶ 93.

*Legal Standard*

A plaintiff may cancel an instrument through Cal. Civ. Code § 3412, which provides that a "written instrument, in respect to which there is a reasonable apprehension that if left outstanding may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered and cancelled." Cal. Civ. Code § 3412; Pyle, 13 Cal.App.5th at 523. A plaintiff seeking cancellation through § 3412 must allege that: (1) an instrument is "void or voidable," and (2) a "serious injury" will result if the instrument is not

cancelled.  <u>Pyle</u>, 13 Cal.App.4th at 523; <u>Saterbak v. JPMorgan Chase Bank, N.A.</u>, 245 Cal.App.4th 808, 818-19 (2016).  Cancellation of instrument is essentially a rescission, the effect being that the parties are placed in the same position they were in before signing the instrument, as if the instrument had never been made.  <u>Pyle</u>, 13 Cal.App.5th at 523.  Cancellation under § 3412 is an equitable action that generally requires the plaintiff to allege tender or offer of tender of any amounts borrowed by the plaintiff.  <u>Saterbak</u>, 245 Cal.App.4th at 819.

*Discussion*

Gonzales is essentially contending that the recorded notice of default is void or voidable because SLS engaged in some form of fraudulent activity.  As discussed above, the Complaint does not show fraudulent (or any other) conduct by SLS that would render the notice of default void or voidable.  For the same reasons that Gonzales's fraud claims fail, her Civil Code § 3412 cancellation claim fails as well.  Dismissal of this cause of action without leave to amend is appropriate.

**9.     Twelfth Cause of Action – Cal. Bus. & Prof. Code § 17200 ("UCL")**

*Defendant's Argument*

SLS argues that Gonzales's UCL claim is predicated on her fraud causes of action.  Because those claims fail, the UCL claim fails as well.

*Relevant Allegations from the Complaint*

The Complaint alleges that UCL prohibits as an unfair business practice fraudulent conduct.  <u>See</u> Complaint ¶ 99.  The Complaint alleges then alleges the conduct the forms the basis of fraud claims, as well as forcing Gonzales into foreclosure proceedings, were unfair business practices.  <u>See</u> <u>id.</u> at ¶ 100.

*Legal Standard*

The UCL prohibits "unfair competition," which is defined to mean any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  For claims based on "unlawful" conduct, the UCL "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable [...] and

subject to the distinct remedies provided thereunder." Farmers Ins. Exch. v. Super. Ct., 2 Cal. 4th 377, 383 (1992).  For claims based on "fraudulent conduct," the UCL "does not refer to the common law tort of fraud." Prakashpalan v. Engstrom, Lipscomb, & Lack, 223 Cal.App.4th 1105, 1135 (2014).  A business practice is "fraudulent" under the UCL if "members of the public are likely to be deceived." Kaldenbach v. Mut. of Omaha Life Ins. Co., 178 Cal.App.4th 830, 848 (2009).  Whether a business practice is "fraudulent" is "based on the likely effect such practice would have on a reasonable consumer." McKell v. Wash. Mutual, Inc., 142 Cal.App.4th 1457, 1471 (2006).

*Discussion*

The Complaint indicates that it is pursuing "fraudulent" conduct under the UCL. However, the allegations track Gonzales's common law fraud claims.  There are no allegations that indicate how a reasonable consumer would be deceived by SLS's conduct.  As discussed above, even if the Second Loan was charged off by BOA, that does not make the Second Loan invalid or prevent SLS or BONY from attempting to collect or foreclose on it.  Further, even if the Court reads the Complaint as attempting to allege "unlawful" conduct based on the common law fraud claims, the Court has already concluded that the fraud claims fail.  Thus, any derivative UCL claim would fail as well.  AMN Healthcare, Inc. v. Ava Healthcare Services, Inc., 28 Cal.App.5th 923, 950 (2018).  Dismissal of this claim without leave to amend is appropriate.

**10.    Thirteenth Cause of Action – Accounting**

*Defendant's Argument*

SLS argues that an accounting is not proper unless a plaintiff alleges that money is owed to her.  Here, the notice of default and notice of trustee sale demonstrates that Gonzales owes money, not that she is owed money.

*Legal Standard*

In California, an accounting is generally a remedy under equity, not a cause of action.  See Batt v. City & Cnty. Of S.F., 155 Cal. App. 4th 65, 82 (2007).  However, an equitable action for an accounting "may be brought to compel the defendant to account to the plaintiff for money or

18

property where: (1) a fiduciary relationship exists between the parties or, (2) where, even though no fiduciary relationship exists, the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable." Jolley v. Chase Home Finance, LLC, 213 Cal.App.4th 872, 910 (2013) (quoting 5 Witkin Cal. Proc. Plead. § 819).  Stated differently, an accounting cause of action "requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." Teselle v. McLoughlin, 173 Cal. App. 4th 156, 179 (2009).

*Discussion*

Gonzales is the party who owes a debt on the Second Loan, not SLS.  No allegations plausibly suggests that SLS owes Gonzales any money.  Although Gonzales alleges that SLS owes her money, the allegation is based on money paid regarding the First Loan, which is not serviced by SLS.  See Complaint ¶¶ 104(a), 105.  Even assuming that the Complaint intends to allege that Gonzales made payments on the Second Loan, that allegation does not plausibly show money owed to Gonzales because the judicially noticed notice of default and notice of sale show that Gonzales is the debtor on the Second Loan.  Therefore, because there is no plausible basis for concluding that SLS owes Gonzales money in the face of the notice of default and notice of trustee's sale, dismissal of this claim without leave to amend is appropriate.  See Quinteros v. Aurora Loan Servs., 740 F. Supp. 2d 1163, 1170 (E.D. Cal. 2010).

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss (Doc. No. 11) is GRANTED without leave to amend; and
2. The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated:   June 3, 2020                    _____
                                          SENIOR  DISTRICT  JUDGE